## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 09-14179-CIV-MOORE/WHITE

TYRONE DAVID SCOTT,

      Movant,

vs.

UNITED STATES OF AMERICA,

      Respondent.

_____/

## ORDER GRANTING MOVANT TYRONE DAVID SCOTT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255; DECLINING TO ADOPT MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Movant Tyrone David Scott's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (dkt # 1). This matter was referred to the Honorable Patrick A. White, United States Magistrate Judge, who issued a Report and Recommendation (dkt # 16). The government filed Objections (dkt # 19) and Scott filed a Response (dkt # 20).

UPON CONSIDERATION of the Motion, the Report and Recommendation, the Objections and Response, after de novo review of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I.     BACKGROUND

This matter involves Movant Tyrone David Scott's ("Scott") contention that he is entitled to be resentenced because he was erroneously sentenced as a career offender. On November 18, 2004, Scott was charged by Indictment of two counts of possession with intent to distribute in excess of five grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). On February 28, 2005, Scott pled

guilty to Count 2 of the Indictment. Prior to sentencing, a PSI was prepared, revealing that pursuant to United States Sentencing Guideline § 4B1.1(a), Scott qualified as a career offender because he was at least 18 years old at the time of the instant offense, the instant offense was a felony controlled substance offense, and he had at least two prior felony convictions of either a crime of violence or a controlled substance offense. In reaching this conclusion, one of the prior offenses on which the PSI relied was a conviction for carrying a concealed firearm.

At sentencing, Scott argued the he did not qualify as a career offender because his conviction for carrying a concealed firearm was not a "crime of violence" under U.S.S.G. § 4B1.1(a). The Court overruled the objection, in accordance with Eleventh Circuit precedent at the time, and sentenced Scott to 235 months in prison. Scott appealed his sentence on grounds that his classification as a career offender was erroneous. The Eleventh Circuit denied his claim and affirmed his sentence. United States v. Scott, 163 F. App'x 791 (11th Cir. 2005). Scott's conviction became final on June 26, 2006. Scott v. United States, 548 U.S. 914 (2006). The instant motion was filed on June 3, 2009.

## II.    ANALYSIS

### A.    Scott's Classification as a Career Offender

Scott contends that although his Motion to Vacate was untimely filed he is (1) entitled to equitable tolling, and (2) he is entitled to have his claim heard pursuant to the manifest injustice exception, or in other words that he is actually innocent of being a career offender. Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a movant has one year to file a motion attacking the sentence under § 2255. 28 U.S.C. § 2255(f). This one-year period runs from the latest of the date on which the judgment becomes final, or "the date on which the right asserted

2

was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Id. at § 2255(f)(1) and (3).[1]

On April 16, 2008, the United States Supreme Court decided Begay v. United States, 553 U.S. 137 (2008), holding that New Mexico's felony offense of driving under the influence of alcohol ("DUI") is not a "violent felony"[2] within the meaning of the Armed Career Criminal Act ("ACCA").[3] See 18 U.S.C. § 924(e)(1)(B).[4]  The Court concluded that New Mexico's DUI offense was too dissimilar from the enumerated offenses in the ACCA's definition of "violent felony" because it was not "roughly similar, in kind as well as in degree of risk posed." Begay, 553 U.S. at 143.  The Court went on to state that New Mexico's DUI offense differed from the offenses enumerated in the ACCA's "violent felony" definition because those crimes all typically involve "purposeful, violent and aggressive conduct," making it "more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim." Id. at 145 (internal quotation marks omitted).  "By way of

---

[1] Though this case deals with the statute of limitations in § 2255(f), the analysis applies to the similar limitations period in 2244(d)(1) which governs prisoners in state custody.

[2] Title 18 U.S.C. § 924(e)(1)(B), the statute at issue in Begay, defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year . . . that (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another."

[3] "The [ACCA] imposes a special mandatory 15-year prison term upon felons who unlawfully possess a firearm and who also have three or more previous convictions for committing certain drug crimes or 'violent felon[ies].'" Begay, 553 U.S. at 139.

[4] The definition of "violent felony" in § 924(e)(1)(B) that was addressed in Begay is the same as the definition for "crime of violence" under § 4B1.2(a) of the U.S. Sentencing Guidelines and the two are therefore given the same interpretation. See U.S. v. Harris, __ F.3d __, 2010 WL 2382401, at *5, 8 (11th Cir. 2010); United States v. Layton, 356 F.. App'x 286, 289 (11th Cir. 2009).

contrast, statutes that forbid driving under the influence, such as the [New Mexico DUI statute], typically do not insist on purposeful, violent, and aggressive conduct; rather, they are, or are most nearly comparable to, crimes that impose strict liability, criminalizing conduct in respect to which the offender need not have had any criminal intent at all."[5] Id.

Begay thus established a new standard for determining whether an offense constitutes a "violent felony" or "crime of violence." Scott now claims that he was erroneously sentenced as a career offender because his prior conviction for carrying a concealed firearm does not qualify as a "crime of violence." Scott's contention that he was erroneously sentenced as a career offender is correct. Two months after Begay, the Eleventh Circuit applied the Begay standard and concluded that carrying a concealed firearm is not a "crime of violence." United States v. Archer, 531 F.3d 1347 (2008). The Eleventh Circuit subsequently concluded that Begay and Archer apply retroactively. Gilbert v. United States., 609 F.3d 1159, 1164 (11th Cir. 2010) (stating that Begay is a "circuit law busting, retroactive Supreme Court decision"),[6] mandate held, 610 F.3d 716, 2010 WL 2612358 (11th Cir. July 1, 2010).[7] The Eleventh Circuit has also held that a Begay challenge to a

---

[5] In determining whether an offense is a "violent felony," a court must "consider the offense generically, that is to say, . . . examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." Begay, 553 U.S. at 141. "[W]here the judgment of conviction and statute are ambiguous, i.e., the determination whether a prior conviction is a qualifying offense from the face of the judgment itself is impossible," a district court may look at the facts underlying a state conviction. United States v. Aguilar-Ortiz, 450 F.3d 1271, 1273 (11th Cir. 2006). In doing so, the court may rely only on the "'charging document, written plea agreement, transcript of the plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." Id. at 1273-74 (quoting Shepard v. United States, 544 U.S. 13, 16 (2005)).

[6] In Gilbert, the Court found that the facts of that case satisfied the Wofford standard, thereby triggering the savings clause of § 2255, which permits review of a successive habeas petition under § 2241. 609 F.3d at 1165.

[7] Subsequent to the issuance and publication of the Eleventh Circuit's opinion in Gilbert, a judge on the panel caused the mandate to be held. Gilbert v. United States, 610 F.3d 716, 2010 WL 2612358

petitioner's erroneous classification as a career offender is cognizable on collateral attack.

In light of <u>Begay</u> and <u>Archer</u>, there is no doubt that Scott was erroneously sentenced as a career offender, and thus that he is actually innocent of being a career offender. Scott's sentence was "enhanced based upon a nonexistent offense–being a career offender with only one prior [qualifying] felony," and as such he was sentenced "for an act that the law does not make criminal." <u>Gilbert</u>, 609 F.3d at 1165.[8] <u>Id.</u> Thus, Scott is actually innocent of being a career offender.

    B.    <u>Equitable Tolling</u>

Before delving into the significance of Scott's actual innocence, this Court must first address Scott's claim that the instant petition is not time barred because he is entitled to equitable tolling. As stated above, <u>Begay</u> was decided on April 16, 2008, giving Scott until April 16, 2009, to file his Motion to Vacate. <u>See</u> 28 U.S.C. § 2255(f)(3). Scott filed his Motion to Vacate on June 3, 2009. Scott claims that although his Motion was untimely under § 2255(f)(3), he is nevertheless entitled to equitable tolling because <u>Begay</u> was not available in the prison library until July of 2008.

The issue of whether a prisoner is entitled to equitable tolling when a change in the law is unavailable to a prisoner during part of the one year in which the prisoner has to file a habeas petition has been raised before in this Circuit. As a general matter, equitable tolling of the AEDPA's

---

(11th Cir. July 1, 2010). Nevertheless, this does not impact the precedential nature of <u>Gilbert</u>'s holdings. "Under the law of this circuit, published opinions are binding precedent. The issuance or non-issuance of the mandate does not affect the result." 11th Cir. IOP 2 to 11th Cir. R. 36, <u>Effect of Mandate on the Precedential Value of Opinion</u>; <u>see also</u> <u>Lamar v. United States</u>, Nos. 8:10-cv-01481-T-24-MAP, 8:06-cr-00199-T-24-MSS1, at *4 n.6 (M.D. Fla. Aug 18, 2010) (citing <u>Martin v. Singeltary</u>, 965 F.2d 944, 945 n.1 (11th Cir. 1992) (stating that "the mandate is the official means of communicating our judgment to the district court and of returning jurisdiction in a case to the district court.")).

    [8] "For federal sentencing purposes, the act of being a career offender is essentially a separate offense, with separate elements (two felony convictions; for violent felonies), which must be proved, for which separate and additional punishment is provided." <u>Gilbert</u>, 609 F.3d at 1165.

statute of limitations is applied sparingly. Arthur v. Allen, 452 F.3d 1234, 1252 (11th Cir. 2006). The AEDPA's statute of limitations may be equitable tolled "if the petitioner demonstrates (1) diligence in his efforts to timely file a habeas petition and (2) extraordinary and unavoidable circumstances." Id. (citing Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999)). "To show diligence, a petitioner claiming deficiencies in the prison law library" must show "when he found out about the library's alleged deficiency, must 'state any independent efforts he made to determine when the relevant limitations period began to run' and must demonstrate how the prison 'thwarted his efforts.'" Id. at 1253 (citing Helton v. Sec'y for the Dep't of Corrs., 259 F.3d 1310, 1314 (11th Cir. 2001)). "The focus of the inquiry regarding extraordinary circumstances is on the circumstances surrounding the late filing of the habeas petition . . . and whether the conduct of others prevented the petitioner from timely filing." Id.

Scott argues that the AEDPA's statute of limitations should be tolled to account for the period from April 16, 2008, through July of 2008 when he states that Begay was not yet available in the prison library. As an initial matter, Scott asserts in his Response to the Government's Response to Order to Show Cause (dkt # 18) that Begay did not become available in the prison library until July of 2008, but provides no evidence to support this allegation. Scott's unsupported assertion concerning Begay's unavailability is factually inadequate to support his argument. Even if this were not the case, however, Begay's unavailability in the prison library for approximately three months would not, without more, warrant equitable tolling. Once Begay became available in the prison library, Scott is presumed to have known that the AEDPA's statute of limitations under § 2255(f)(3) had been triggered on the date that the opinion in Begay issued. Scott has failed to demonstrate diligence in filing his habeas petition because he gives no reason why the remaining nine months

6

were insufficient to file his Motion to Vacate. See McKenzie v. United States, No. 09-20447-CIV, 2009 WL 3836450, at *5 (S.D. Fla. Nov. 16, 2009) (stating that "movant's conclusory allegations regarding insufficient access to a law library do not justify equitable tolling"); Sutton v. United States, 8:04-cr-325-T-17TBM, 8:09-cv-202-T-17TBM, 2009 WL 890286, at *2 (M.D. Fla. Mar. 31, 2009) (finding that prisoner was not entitled to equitable tolling where he lacked access to prison library for first five months of limitations period because nothing prevented him from filing his petition in the remaining seven months); Fonseca v. McNeil, No. 08-80777-CIV, 2009 WL 196095, at *4 (S.D. Fla. Jan. 27, 2009) (stating that transfers between prisons, solitary confinement, lockdowns, and restricted access to law libraries do not warrant equitable tolling); Smith v. McNeil, No. 4:08cv40/SPM/EMT, 2008 WL 2756405, at *5 (N.D. Fla. July 14, 2008) (finding that prisoner who had limited access to library during limitations period and who received a treatise on post-conviction remedies five weeks before expiration of limitations period was not entitled to equitable tolling); Castro v. United States, Nos. 6:07-cv-324-Orl-22KRS, 6:03-cr-198-Orl-22KRS, 2008 WL 1766935, at *3-4 (M.D. Fla. Apr. 14, 2008) (denying equitable tolling where prisoner sought tolling for the 35 days he was in lockdown and had no library access). Therefore, Scott is not entitled to equitable tolling because he has not shown diligence or extraordinary circumstances.

    C.    Manifest Injustice Exception

       Scott argues that this Court should review his untimely Motion to Vacate on the merits because he is entitled to the manifest injustice exception to procedurally defaulted claims, also known as the actual innocence exception. Claims not raised previously at trial or on direct appeal are procedurally barred absent a showing of cause for the default and prejudice from the error. See House v. Bell, 547 U.S. 518, 536 (2006); Hollis v. Davis, 941 F.2d 1471, 1476 (11th Cir. 1991). In

7

addition, there is a miscarriage of justice exception, which is based on the notion "that the principles

of comity and finality that inform the concepts of cause and prejudice must yield to the imperative of

correcting a fundamentally unjust incarceration." Id. (internal quotation marks omitted).  Under this

miscarriage of justice exception, a prisoner asserting "actual innocence" as a gateway to a defaulted

claim must establish that, in light of new evidence, "it is more likely than not that no reasonable juror

would have found petitioner guilty beyond a reasonable doubt."[9]  Schlup v. Delo, 513 U.S. 298, 327

(1995); see Bell, 547 U.S. at 539 (holding that the Schlup standard applies to defaulted sentencing-

related claims, even after the enactment of the AEDPA).

      In crafting the manifest injustice exception, the Supreme Court has repeatedly noted that, for

the most part, "'victims of fundamental miscarriages of justice will meet the cause-and-prejudice

standard.'"  Carrier, 477 U.S. at 495-96 (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)); see

Schlup, 513 U.S. at 320.  Thus, the miscarriage of justice exception was explicitly tied to actual

innocence "[t]o ensure that the . . . exception would remain 'rare' and would only be applied in the

'extraordinary case,' while at the same time ensuring that the exception would extend relief to those

who were truly deserving." Schlup, 513 U.S. at 321.  Before resorting to the miscarriage of justice

exception, a district court must first determine if procedurally defaulted claims meet the cause and

prejudice exception.  Dretke, 541 U.S. at 393-94 (stating that "a federal court faced with allegations

---

[9] The miscarriage of justice exception was first applied in the context of one who is actually
innocent of the substantive offense.  See Murray v. Carrier, 477 U.S. 478, 496 (1986).  The exception
was later extended to claims of capital sentencing error.  Sawyer v. Whitley, 505 U.S. 333 (1992)
(limiting the exception to cases where the applicant could show "by clear and convincing evidence that,
but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death
penalty under the applicable state law").  In Dretke v. Haley, the Supreme Court declined to decide
whether the miscarriage of justice exception applies to procedurally defaulted claims challenging
noncapital sentencing error.  541 U.S. 386 (2004).

of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and other grounds for cause to excuse the procedural default").

It is well settled that the manifest injustice exception applies in the context of procedurally defaulted claims not raised previously at trial or on direct appeal. However, the Eleventh Circuit has never had occasion to decide whether the manifest injustice exception applies to the AEDPA's statute of limitations because no petitioner making such an argument has succeeded in making the requisite showing of "actual innocence." Scott v. Duffy, 372 F. App'x 61, 63 (11th Cir. 2010); Melson v. Allen, 548 F.3d 993, 1001 (11th Cir. 2008) vacated and remanded on other grounds by Melson v. Allen, 130 S. Ct. 3491 (2010); Johnson v. Dep't of Corrs., 513 F.3d 1328, 1333 (11th Cir. 2008). Other Circuits that have ruled on the issue are divided. The First, Fifth, Seventh, Eighth, and Ninth Circuits have found that no such exception exists. Lee v. Lampert, 610 F.3d 1125, 1126-32 (9th Cir. 2010); Escamilla v. Jungwirth, 426 F.3d 868, 871-72 (7th Cir. 2005); David v. Hall, 318 F.3d 343, 347 (1st Cir. 2003); Cousin v. Lensing, 310 F.3d 843, 849 (5th Cir. 2002); Flanders v. Graves, 299 F.3d 974, 976-79 (8th Cir. 2002). The Sixth Circuit has found that such an exception does exist, and the Tenth Circuit has indicated that such an exception may exist. Souter v. Jones, 395 F.3d 577, 601-02 (6th Cir. 2005); Gibson v. Klinger, 232 F.3d 799, 808 (10th Cir. 2000) (stating that "[e]quitable tolling would be appropriate, for example, when a prisoner is actually innocent").

Here, there is no question that Scott is actually innocent of being a career offender. The only question is whether, on account of his untimely filing, he must serve the enhanced sentence he received for being classified as a career offender, even though that classification was erroneous. This Court looks to the text of the AEDPA's statute of limitations as the starting point to answering this

9

question. Section 2255's statute of limitations begins running from the latest of four dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). Section 2255 thus enumerates specific dates on which the statute of limitations begins to run. In any given case, the date that will trigger the statute of limitations is that latest of these dates. The text of § 2255(f) makes no mention of any exceptions that would permit a habeas petition to be reviewed on the merits more than one year after the statute of limitations has been triggered.

Despite the absence of such an exception in the text of § 2255(f), the AEDPA's statute of limitations may be equitably tolled under certain circumstances. Sandvik, 177 F.3d at 1271.[10] This is so because of the general presumption that a nonjurisdictional statute of limitations may be equitably tolled. Id. When interpreting a statute, we presume that Congress legislates against the background of existing jurisprudence, unless the statute explicitly says otherwise. Young v. United States, 535 U.S. 43, 49-50 (2002). Thus, when Congress enacted the AEDPA, it is presumed that Congress recognized that as a nonjurisdictional statute of limitations, the one-year limitations period

---

[10] Equitable tolling may be applied "if the petitioner demonstrates (1) diligence in his efforts to timely file a habeas petition and (2) extraordinary and unavoidable circumstances." Arthur, 452 F.3d at 1252.

10

would be subject to equitable tolling.  Therefore, the AEDPA's one-year statute of limitations period

may be equitably tolled, despite the fact that the text of the statute of limitations is clear and does not

provide for equitable tolling.  Holland v. Florida, 130 S. Ct. 2549, 2560 (2010).

      The AEDPA was enacted on April 24, 1996.  Sammour v. United States Atty. Gen., 265 F.

App'x 817, 818-819 (11th Cir. 2008).  At that time, it was well established that the manifest injustice

exception applied to unexhausted claims, second or successive habeas petitions, and claims that

violated a state post-conviction statute of limitations.[11]  Souter, 395 F.3d at 599; see Murray, 477

U.S. at 495-96 (finding that manifest injustice exception is applicable to an unexhausted claim);

Kuhlmann v. Wilson, 477 U.S. 436, 451 (1986) (finding that manifest injustice exception is

applicable to a successive habeas petition); Coleman v. Thompson, 501 U.S. 722, 750 (1991)

(finding that manifest injustice exception is applicable to a post-conviction claim raised after the

state statute of limitations has expired).  It bears mentioning here that when the AEDPA was enacted

in 1996, there were two different standards for the manifest injustice exception.  The first one, which

we will refer to as the Schlup standard, was applied in Coleman, Kuhlmann, and Murray, and

provides that a prisoner asserting "actual innocence" as a gateway to a defaulted claim must establish

that, in light of new evidence, "it is more likely than not that no reasonable juror would have found

petitioner guilty beyond a reasonable doubt."  Schlup, 513 U.S. at 327.  The other standard, which

we will call the Sawyer standard, was applied in the context of a prisoner who claimed he was

actually innocent of the death penalty, and provided that the prisoner "must show by clear and

---

    [11] Although the statute we are construing here is § 2255(f), which governs prisoners in federal
custody, § 2244(d)(1), the statute of limitations that governs prisoners in state custody, is similar.  Thus,
it is reasonable to conclude that Congress' intent as to each of these provisions is the same.  Souter, 395
F.3d at 597 n.12.

convincing evidence that but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." Sawyer v. Whitley, 505 U.S. 333, 336 (1992). Thus, the Schlup standard only required a prisoner to demonstrate that he was "more likely than not" actually innocent, whereas the Sawyer standard required a showing by "clear and convincing" evidence.

When Congress enacted the AEDPA, it was legislating against the background that the Schlup standard applied to unexhausted claims, second or successive habeas petitions, and claims that violated a state post-conviction statute of limitations. Thus, after the enactment of the AEDPA, the correct presumption was that the manifest injustice exception would continue to apply in the same contexts as before, unless the text of the AEDPA explicity said otherwise. The AEDPA said nothing about the applicability of the manifest injustice exception to claims that were not raised at trial or on direct appeal. As to second or successive habeas petitions, however, the AEDPA explicitly altered the applicability of the manifest injustice exception by codifying the exception and raising the threshold for successfully demonstrating actual innocence by requiring a showing akin to the Sawyer clear and convincing  standard, instead of the lower Schlup standard.[12] House, 547 U.S. at 539.

The fact that Congress codified the manifest injustice exception as to second and successive petitions, and raised the standard to a showing by clear and convincing evidence, demonstrates that Congress was familiar with the manifest injustice jurisprudence and knew how to change it. It follows that Congress also knew that in order to change the way the manifest injustice exception is

_____

[12] "A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain -- (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense . . . ." 28 U.S.C. § 2255(h)(1).

applied to unexhausted claims, it would have to do so explicitly, as it did with second and successive petitions. The fact that Congress could have done so, and did not, demonstrates that it did not intend to change the way the manifest injustice exception applied to unexhausted claims. Indeed, shortly after the AEDPA was enacted, the Supreme Court concluded that the <u>Schlup</u> standard still applied to procedurally defaulted claims that were not raised at trial or on direct appeal. <u>House</u>, 547 U.S. at 539.

In the cases of unexhausted claims and second or successive petitions, determining how the manifest injustice exception applied after the enactment of the AEDPA was relatively easy. The <u>Schlup</u> standard still applied to unexhausted claims because nothing in the AEDPA changed that. Congress did, however, change the standard applied to second and successive habeas petitions by codifying a clear and convincing standard akin to the <u>Sawyer</u> standard. In the case of the AEDPA's new statute of limitations, the applicability of the manifest injustice exception seems more complicated at first blush, because there was no federal statute of limitations on habeas proceedings prior to the AEDPA. Nevertheless, it was well established that if a prisoner was able to meet the <u>Schlup</u> standard, a Court could review a habeas petition on the merits, even though the prisoner's claims were procedurally barred on account of having failed to meet the state's post-conviction statute of limitations. <u>Coleman</u>, 501 U.S. at 750.

One particularly relevant question, then, is whether a claim that is procedurally defaulted because of failure to timely file a state post-conviction claim is sufficiently analogous to an untimely federal habeas petition to warrant the application of the manifest justice exception. The reason that a federal court may not generally rule on the merits of a federal habeas petition bringing claims that were not timely raised in the state court is "grounded in principles of comity" and permits states to

"have the first opportunity to address and correct alleged violations of [a] state prisoner's federal rights." <u>Id.</u> at 731.  Moreover, "[t]he exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." <u>Id.</u> (internal quotation marks omitted).  Application of the cause and prejudice standard, and the manifest injustice exception, in this context serves to "provide adequate protection to victims of a fundamental miscarriage of justice." <u>Schlup</u>, 513 U.S. at 321-22 (stating that the miscarriage of justice exception "accommodates both the systemic interests in finality, comity, and conservation of judicial resources, and the overriding individual interest in doing justice in the 'extraordinary case.'"); <u>see</u> <u>Coleman</u>, 501 U.S. at 750 (stating that in applying the manifest injustice exception, there is no reason to distinguish between cases where a prisoner failed to raise an issue on direct appeal and one who files no appeal at all).

Turning to the AEDPA's statute of limitations, "one of the purposes of the AEDPA was 'to curb the abuse of the statutory writ of habeas corpus, and to address the acute problems of unnecessary delay and abuse in capital cases.'" <u>Souter</u>, 395 F.3d at 599 (quoting H.R. Conf. Rep. No. 104-518, at 111 (1996) *reprinted in* 1996 U.S.C.C.A.N. 944, 945).  The AEDPA's statute of limitations was one mechanism used to achieve these objectives.  While comity is not a concern when dealing with the AEDPA's statute of limitations, it is still necessary to strike a balance between finality and conservation of judicial resources, and the overriding individual interest in doing justice in the extraordinary case.  Thus, when deciding whether to apply the manifest injustice exception in the context of the AEDPA's statute of limitations, the principle that the interests of finality and conservation of judicial resources "must yield to the imperative of correcting a fundamentally unjust incarceration" is just as relevant as it is in the context of unexhausted claims, second or successive

14

petitions, and claims that are procedurally defaulted because of untimely filing in state court. Carrier, 477 U.S. at 495; see Calderon v. Thompson, 523 U.S. 538, 558 (1998) (stating that "[t]he miscarriage of justice standard is altogether consistent . . . with the AEDPA's central concern that the merits of concluded criminal proceedings not be revisited in the absence of a strong showing of actual innocence").

Inasmuch as the AEDPA's statute of limitations is one means used to promote finality and conservation of judicial resources, there is no reason why these interests should not yield to the imperative of correcting a fundamentally unjust incarceration. Indeed, in other situations where a prisoner is procedurally barred from bringing a habeas claim, the Supreme Court has consistently concluded that the interests of finality and conservation of judicial resources must yield when the prisoner makes an adequate showing of actual innocence. See Murray, 477 U.S. at 495-96; Kuhlmann, 477 U.S. at 451; Coleman, 501 U.S. at 750. This is true even where Congress has been silent as to the availability of an equitable exception. The reasons that the manifest injustice exception has been applied to claims that were procedurally defaulted because of failure to comply with state post-conviction statutes of limitations are not identical to the interests that are implicated in applying the manifest injustice exception to § 2255 claims filed after the AEDPA's statute of limitations has expired. These reasons are, however, sufficiently analagous to support the conclusion that application of the exception in the latter context is indeed appropriate and necessary. Moreover, applying the manifest injustice exception to an untimely filed § 2255 claim is consistent with the principle that has guided the Supreme Court in fashioning the manifest injustice jurisprudence: that "the writ should be available to afford relief to those persons whom society has grievously wronged in light of modern concepts of justice." Kuhlmann, 477 U.S. at 448 (internal quotation marks

15

omitted).

Circuits that have reached the opposite conclusion base their reasoning in part on the fact that no manifest injustice exception to the AEDPA's statute of limitations is found in the text of the AEDPA. For example, some courts have viewed the triggering dates for the AEDPA's statute of limitations as providing "exceptions to the primary date for the running of the limitations period." See Lee, 610 F.3d at 1127 (internal quotation marks omitted). Thus, § 2255(f)(1), the date on which the judgment becomes final, is deemed to be the primary triggering date, and § 2255(f)(2), (3) and (4) are viewed as exceptions to the primary triggering date. Under this logic, the absence of an actual innocence exception in a list of specifically enumerated exceptions means that "Congress likely did not conceive that the courts would add new exceptions and it is even more doubtful that it would have approved of such an effort." David, 318 F.3d at 346 (stating that it is not our place to "engraft an additional judge-made exception onto congressional language that is clear on its face"); see Lee, 610 F.3d at 1129 (stating that the fact that "Congress created three exceptions to the general rule that the limitations period begins upon the conclusion of direct review indicates it did not intend other exceptions"). This conclusion is supported by the fact that Congress explicitly included an actual innocence exception in the AEDPA's requirements for filing second or successive habeas petitions.[13] See 28 U.S.C. § 2255(h); Lee,610 F.3d 1129-30. Thus, given that Congress included an actual innocence exception for second or successive habeas petitions, but did not make such an exception to the AEDPA's statute of limitations provisions, one reasonable conclusion is that it was

---

[13] Under § 2255(h), a second or successive habeas petition must contain "(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(f).

the intent of Congress that no actual innocence exception apply to the AEDPA's statute of limitations. Id.; David, 318 F.3d at 347.

Although persuasive, this Court disagrees with such reasoning. First, § 2255(f) does not have a primary triggering date for the AEDPA's statute of limitations with three other enumerated exceptions, as other courts have suggested. Rather, § 2255(f) has four different triggering dates, the latest of which is always used. Thus, the argument that the manifest injustice exception is not one of the so called enumerated exceptions carries little weight. This argument is further eroded by the fact that equitable tolling applies to unexhausted claims, despite not being among these so called enumerated exceptions.

Second, undue emphasis is made of the fact that Congress explicitly made the manifest injustice exception applicable to second and successive habeas petitions, but not to the AEDPA's statute of limitations. As stated above, the Schlup version of the manifest injustice exception was applicable to second and successive petitions prior to the passage of the AEDPA. If Congress wanted to maintain the status quo, it needed to do nothing because courts presume that Congress legislates against the background of existing jurisprudence. This is precisely what Congress did with respect to the applicability of the manifest injustice exception to claims not raised at trial or on direct appeal. Predictably, courts shortly thereafter reaffirmed the validity of the manifest justice exception in this context, despite the fact that Congress codified a heightened standard for the manifest injustice exception with respect to second or successive habeas petitions, but not as to unexhausted claims.

In order to change the applicability of the manifest injustice exception to second and successive petitions to a higher standard akin to the clear and convincing Sawyer standard, however,

17

Congress had no choice but to include this language in the AEDPA. This fact diminishes the force of the argument that the codification of the manifest injustice exception in one context, but not in another, proves that Congress only intended the exception to apply to second and successive habeas petitions. Furthermore, Congress did not codify the manifest injustice exception as applicable to claims not raised at trial or on direct appeal. Although Congress could have done so, but did not, it remains well established that the manifest justice exception applies to unexhausted claims. Therefore, in determining whether the manifest injustice exception applies to the AEDPA's statute of limitations, this Court gives little weight to the fact that Congress codified the exception as to second and successive petitions, but not as to the AEDPA's statute of limitations.

The crux of the arguments put forth by Circuits that have concluded that the manifest injustice exception does not apply to the AEDPA's statute of limitations is that Congress: (1) codified the manifest injustice exception in the context of second and successive petitions to raise the standard to a clear and convincing standard; (2) did nothing in the context of claims not raised at trial or on direct appeal because it knew that by remaining silent, the existing jurisprudence would remain unchanged; and (3) did nothing in the context of the AEDPA's statute of limitations because, given that no statute of limitation had ever been applicable to federal habeas petitions, it would be clear that Congress did not intend for the manifest injustice exception to apply to the AEDPA's statute of limitations. This Court cannot conclude that this is what Congress intended when it passed the AEDPA because such an approach is anything but clear and is also incongruous with the application of the manifest injustice exception to state post-conviction statutes of limitations.

The better view is that Congress: (1) codified the manifest injustice exception in the context of second and successive petitions because this was the only way to change the existing jurisdictional

18

landscape; (2) did nothing in the context of claims not raised at trial or on direct appeal because it knew that by remaining silent, the existing jurisprudence would remain unchanged; (3) knew that the manifest injustice exception had been applied to state post-conviction statutes of limitations; (4) assumed that equitable tolling would be applicable to the AEDPA's statute of limitations, given the presumption that nonjurisdictional statutes of limitations may be equitably tolled; and (5) knew that the manifest injustice exception is another equitable measure that courts would apply to the AEDPA's statute of limitations under appropriate circumstances. The first four of these propositions are not in dispute, and the fifth is the most reasonable inference to be drawn from them as to what Congress intended because it squares neatly with existing jurisprudence. Moreover, this conclusion is fully aligned with the AEDPA's purpose, which is to curb the abuse of the statutory writ of habeas corpus, to address the acute problems of unnecessary delay and abuse in capital cases, and to further the principles of comity, finality, and federalism. There is no reason to believe that Congress intended for the equitable safeguards that federal courts have used to provide adequate protection against fundamental miscarriages of justice to be extinguished when relief is untimely sought in federal court, but otherwise available when a second or successive claim is raised, when a claim was not raised at trial or on direct appeal, or when no post-conviction relief was sought at all.

The conclusion that the manifest justice exception is applicable to the AEDPA's statute of limitations is further supported by the Eleventh Circuit's § 2255 "savings clause" jurisprudence. Section 2255's savings clause permits traditional habeas relief under § 2241 when a motion under § 2255 is inadequate or ineffective to test the legality of a prisoner's detention, thereby saving § 2255 from serious constitutional concerns. Gilbert, September 14, 2010 (citing Wofford v. Scott, 177 F.3d 1236, 1241 (11th Cir. 1999)). Section 2255's savings clause is triggered when:

1) That claim is based upon a retroactively applicable Supreme Court decision; 2) the holding of that Supreme Court decision establishes the petitioner was convicted for a nonexistent offense; and 3) circuit law squarely foreclosed such a claim at the time it otherwise should have been raised in the petitioner's trial, appeal, or first § 2255 motion.

Wofford, 177 F.3d at 1244.  If Scott had filed a Motion to Vacate on other grounds that was denied prior to Begay, then in order to file a second petition in light of Begay, Scott would have had to comply with the requirements of § 2255(h) to have his claim that he was erroneously sentenced as a career offender ruled upon on the merits.[14]  Although Scott is actually innocent of being a career offender, Scott does not meet the requirements of § 2255(h)(1) because his innocence stems from a change in the law, rather than from newly discovered evidence.[15]  Nor does Scott meet the requirements of 2255(h)(2) because the change in the law wrought by Begay was based on a statutory interpretation, as opposed to a new rule of constitutional law.  Nevertheless, had he filed a habeas petition on other grounds prior to Begay, he would meet the requirements of the Wofford test, thereby permitting his claim to be heard under § 2241 and entitling him to relief.  See Gilbert, 609

---

[14] "A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals to contain -- (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(1).

[15] Even though Scott is actually innocent of being a career offender, he still does not meet the Sawyer clear and convincing standard that applies to second or successive habeas petitions.  The manifest injustice exception applicable to second or successive petitions is directed towards claims that the petitioner is actually innocent of the substance offense, rather than claims of being actually innocent of a non-capital sentence.  This is not altogether surprising given that the applicability of the manifest injustice exception to a non-capital sentence was still percolating through the courts when the AEDPA was enacted. Compare Sones v. Hargett, 61 F.3d 410, 418 (5th Cir. 1995) (stating that manifest injustice exception applies to non-capital sentence); United States v. Maybeck, 23 F.3d 888, 892 (4th Cir. 1994) (same); Mills v. Jordan, 979 F.2d 1273, 1279 (7th Cir. 1992) (same); Jones v. Arkansas, 929 F.2d 375, 381 (8th Cir. 1991) (same); with United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1993) (stating that a person cannot be actually innocent of a non-capital sentence).

20

F.3d at 1165. To hold that Scott's sentence would be vacated if he had previously filed a Motion to Vacate, but that he is entitled to no relief because this is his first Motion to Vacate, is tantamount to surrendering to mere happenstance this Court's power to provide adequate protection to victims of a fundamental miscarriages of justice. Therefore, the fact that Scott would be entitled to relief if this were his second bite at the apple, as opposed to his first, supports this Court's conclusion that he is entitled to relief here.

Finally, as is often the case, a resort to common sense further reaffirms this Court's conclusion. Should an individual be required to serve the portion of a sentence attributable to his status as a career offender, when he is actually innocent of being a career offender? The answer must surely be no. "The common law tradition of the 'Great Writ' cannot be so moribund, so shackled by the chains of procedural bars and rigid gatekeeping that this court is not authorized to grant relief to one who is 'in custody in violation of the Constitution or laws or treaties of the United States.'" Gilbert, 609 F.3d at 1163 (quoting *Fiat Justitia, Ruat Coelum*). Accordingly, this Court finds that the manifest injustice exception applies to the AEDPA's statute of limitations in § 2255(f). Upon reviewing Scott's claim, this Court further finds that Scott is actually innocent of being a career offender and his sentence is due to be vacated.[16]

## III.   CONCLUSION

For the foregoing reasons, it is

ORDERED AND ADJUDGED that Movant Tyrone David Scott's Motion to Vacate, Set

---

[16] The government's argument that Scott is not actually innocent of being a career offender because he could theoretically receive the same sentence or higher based on an upward variance at resentencing is without merit. This Circuit's jurisprudence makes clear that a person can be actually innocent of a noncapital sentence. Gilbert, 609 F.3d at 1155. Whether Scott should be resentenced within or without the relevant guidelines range is a matter to be taken up at resentencing.

21

Aside or Correct Sentence under 28 U.S.C. § 2255 (dkt # 1) is GRANTED.  Scott's sentence is hereby VACATED and he is to be resentenced without the career offender enhancement and with the benefit of any other reduction to which, as a result, he may be entitled.  This Court declines to adopt the Report and Recommendation.  The Clerk of the Court is instructed to CLOSE this case.  All pending motions are DENIED AS MOOT.

DONE AND ORDERED in Chambers at Miami, Florida, this 15th day of September, 2010.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc:   U.S. Magistrate Judge Patrick A. White

Tyrone David Scott
75032-004
Herlong Federal Correctional Institution
P.O. Box 800
Herlong, CA 96113